**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re:                                              Case No. 12-80935
                                                    Chapter 7
VALERIE AMOROSO AL-RIYAMI,

    Debtor.

_____

VALERIE AMOROSO AL-RIYAMI,

    Plaintiff,

v.                                                  Adv. Proc. 12-08021

UNITED STATES DEPARTMENT
OF EDUCATION,

    Defendant.

## MEMORANDUM OPINION

    Before the court is Valerie Amoroso Al-Riyami's ("Al-Riyami") complaint to determine the dischargeability of her student loan debts to the United States Department of Education ("USDE"). Trial was held in Opelika, Alabama on August 16, 2013. At trial, Al-Riyami was represented by her attorney, Charles M. Ingrum, Jr., and USDE was represented by its counsel, DeAnne M. Calhoon. For the following reasons, judgment will enter in favor of Al-Riyami holding these debts are dischargeable under 11 U.S.C. § 523(a)(8).

### Jurisdiction

    The court's jurisdiction in this matter is derived from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the

bankruptcy court.  *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985).  Further, because this adversary proceeding involves the dischargeability of a particular debt, this is a core proceeding under 28 U.S.C. § 157(b)(2)(I), thereby extending this court's jurisdiction to the entry of a final order of judgment.

## Findings of Fact

Al-Riyami attended college at Auburn University at Montgomery and at the University of Alaska.  Her education at these two institutions was financed, in part, by loans from USDE.  She graduated in 1999 majoring in sociology.  As of the trial date, Al-Riyami's consolidated debt for these student loans was approximately $82,160.19; comprised of $66,704.47 principal and $15,455.72 interest.  Interest currently accrues on that loan at the rate of 7%.

In April of 2000, Al-Riyami was employed by the Army and Air Force Exchange Service (AAFES) earning approximately $33,000 per year.  She worked with AAFES for approximately 10 years.  During a part of her tenure with AAFES, Al-Riyami worked abroad.

In 2001, Al-Riyami consolidated her student loans.  She made sporadic payments on the student loan throughout the time of her AAFES employment.  While she was employed with AAFES, Al-Riyami paid approximately $8,500.00 on her student loan debt.  However, during that same period, she was regularly in a forbearance status with respect to the loans and during those times, made no payments.

In February 2011, Al-Riyami's student loan debt officially was placed in default status.

Al-Riyami was unemployed for a year after she left AAFES.  Then, in June 2011, she was employed by University Day Care in Auburn, Alabama.  There, she earned $8.50 per hour.   While working in the day care center, Al-Riyami sustained a knee injury that required her to miss time from work.  Although she still experiences pain in her knee, that injury has healed and is not debilitating.

In March 2013, Al-Riyami began work with Onin Staffing as a business development manager.  There, she earns $10.50 per hour

working a 40 hour week.  Currently, Al-Riyami's net income totals approximately $1,950.00 per month from her Onin Staffing earnings and from food stamps.

Al-Riyami's household expenses include $725.00 month rent, $125.00 month electric service, $75.00 month water, $20.00 month garbage, $500.00 month food, $50.00 month clothing, $220.00 month transportation, and $780.00 month child care.[1]  These expenses total $2495.00 and result in a monthly household deficit of about $545.00.  That deficit is currently made up by assistance from her parents and money she occasionally receives from her estranged husband.

Al-Riyami is 40 years old.  She has two dependent children, ages 8 and 4 years.  As earlier noted, she is separated from her husband.  Al-Riyami desires a divorce from her husband, but she cannot afford the required legal fees to obtain one.  She owns no automobile but does have the loan of a car from her parents.

Al-Riyami has regularly searched for higher paying employment but without success.  Returning to work at AAFES, where she earned substantially more but where she was deployed overseas, is impractical due to the care requirements of her minor children.

The USDE has offered to reduce Al-Riyami's debt to $45,000.00 and lower the interest rate on that debt to 3% if she will agree to participate in an income based repayment program.  Under that program, payment on the debt would be contingent upon Al-Riyami's income, and any amount of the debt that remained unpaid would be forgiven after 25 years.  Based upon Al-Riyami's current income, she would not be required under the program to make any payment on the loan.

Conclusions of Law

Ordinarily, student loan debts are not dischargeable in bankruptcy.  An exception to this rule exists when the repayment of the student loan

---

[1] Al-Riyami's expense itemization does not include costs for a vehicle and insurance, telephone, haircuts, recreation, or for unanticipated emergencies.

Case 12-08021    Doc 32    Filed 01/06/14    Entered 01/06/14 13:47:56    Desc Main
Document    Page 3 of 7

would result in an undue hardship for the debtor and the debtor's dependents if the loan repayment was required.[2]

The phrase "undue hardship" is not defined by the Bankruptcy Code. The court of appeals for this circuit in *Hemar Insurance Corporation of America v. Cox (In re Cox)*, 338 F.3d 1238 (11th Cir. 2003), however, has adopted the three-part test for determining undue hardship originally announced by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2nd Cir. 1987). The so-called *Brunner* test for "undue hardship" requires the debtor to show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Cox*, 338 F.3d at 1241 (quoting *Brunner*, 831 F.2d at 396).

### Brunner Test's First Prong: Minimal Living Standard

The first prong of the *Brunner* test requires the court to consider the debtor's current income and expenses to determine whether she can maintain a minimal standard of living if required to repay the student loans. While there is no precise definition of the phrase "minimal standard of living," that standard does not condemn the debtor to a life of abject poverty. *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 305 (3rd Cir. 1995). On the other hand, the mere fact that repayment of the student loans would be difficult for the debtor is not enough to result in the discharge of the debts. *Faish*, 72 F.3d at 306-07;

---

[2]The statute provdes:
(a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–...
   (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

*United Student Aid Funds, Inc. V. Nascimento (In re Nascimento)*, 241 B.R. 440, 445 (9th Cir. BAP 1999). In short, the hardship of repayment must be undue. Therefore, a minimal standard of living lies somewhere between poverty and mere difficult. In order to make this determination the court must examine the debtor's income and reasonable expenses in light of her particular circumstances to determine whether repayment would impose an undue hardship. *Ivory v. United States (In re Ivory)*, 269 B.R. 890 (Bankr. N.D. Ala. 2001).

In this case, Al-Riyami's reasonable expenses exceed her income, which includes some public assistance, by over $500.00 per month. Further, her estimate of expenses is a bare-boned one in which she omits expenses that almost certainly will arise. Taking these omitted expenses into account only increases the projected monthly deficit and makes it clear that Al-Riyami cannot maintain a reasonable standard of living if required to repay these student loan obligations.

## Brunner Test's Second Prong: Persistent Circumstance

The second prong of the *Brunner* test requires the court to look into the foreseeable future and determine whether the debtor's inability to repay the loans and maintain a minimal standard of living is likely to persist. The court concludes that it is.

That conclusion is bolstered by these facts. While USDE argues that Al-Riyami has had past employment for which she earned upwards of $30,000.00 a year, and that she has potential to earn that amount in the future, that argument, however, ignores that Al-Riyami's higher paying job was one that she held overseas. Today and for the foreseeable future, that type employment, however, is impractical for her. Al-Riyami has two minor children who she is rearing as a single mother, and for that reason alone, high paying employment outside this country is out of the question for Al-Riyami.

Further, the evidence shows that Al-Riyami has diligently searched for higher paying jobs. In spite of these efforts, the only employment opportunities that she has found are those that pay in the area of minimum wage. Her degree in sociology is not highly marketable and does not offer a realistic hope of a higher paying job.

For these reasons, the court finds that Al-Riyami has proven the second prong of the *Brunner* test; that her current circumstances are likely to persist into the foreseeable future.

**Brunner Test's Third Prong: Prior Good Faith Effort to Repay**

Under this prong of the undue hardship test, the debtor must prove that she has made a good faith effort to repay her student loans. During the time that Al-Riyami was employed overseas, she made payments of about $8,500.00 on her student loan debt. During that same period, Al-Riyami's account was from time to time placed in a forbearance status. During the forbearance periods, she of course made no payments. In short, the evidence leads the court to conclude that Al-Riyami paid on her student loan debts when she could and when she was unable to do so, sought to have the loans placed in forbearance status.

USDE contends that Al-Riyami's good faith effort to repay the loans, or lack thereof, is demonstrated by her failure to participate in an Income Contingent Repayment Plan. If Al-Riyami participated in such a plan, her obligation to make payments on the loans would be contingent upon her level of income. Her current income would not require her to make a payment on the loans. In addition, any unpaid balance of the loan would be forgiven at the end of 25 years.

The Eleventh Circuit has rejected a per se rule that a debtor cannot show good faith where he or she has not enrolled in the income contingent repayment program. *Educational Credit Management Corp. v. Mosley (In re Mosley*, 494 F.3d 1320, 1327 (11th Cir. 2007). "Even extremely low repayment amounts through the use of such programs do not necessarily require a debtor to enroll in order to establish good faith. *In re McLaney*, 375 B.R. 666, 677 (M.D. Ala. 2007)(citing *In re Durrani*, 311 B.R. 496, 506 (Bankr. N.D. Ill. 2004).

In this case, the debtor has clearly demonstrated that she lacks the ability to repay these student loans. Those circumstances will almost certainly continue into the foreseeable future. Therefore, in the view of the court, it would be a fruitless exercise to shackle the debtor to a contingent repayment plan. See *In re Bronsdon*, 435 B.R. 791, 803 (1st Cir. BAP 2010). To do so is not required under 11 U.S.C. § 523(a)(8).

Conclusion

For the foregoing reasons, the court finds that Al-Riyami's student loan debts owed to USDE are dischargeable under 11 U.S.C. § 523(a)(8). Pursuant to Fed. R. Bankr. Proc. 9021, a separate order will enter holding the claims of USDE dischargeable.

Done this the 6th day of January, 2014.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Charles M. Ingrum, Jr., Plaintiff's Attorney
DeAnne M. Calhoon, Defendant's Attorney